[No. 20236.   In Bank. — January 18, 1887.]

## THE PEOPLE, RESPONDENT, *v.* JOHN ROGERS, APPELLANT.

CRIMINAL LAW — MURDER — EVIDENCE CONNECTING DEFENDANT WITH
OTHER OFFENSES. — The defendant was convicted for a murder com-
mitted by him while burglarizing the house of the deceased.  At the
trial, the prosecution, against the objections of the defendant, intro-
duced evidence tending to show that the defendant gained an entrance
to the house with certain instruments which had been stolen from a
neighboring house at the time of a prior burglary, and that the homi-
cide was committed with a pistol which had been taken at another
prior burglary.  *Held*, that the evidence was admissible, notwithstand-
ing it tended to connect the defendant with the perpetration of other
crimes.

ID. — SUFFICIENCY OF EVIDENCE — JURY. — In such a case, the sufficiency of
the evidence connecting the defendant with the prior burglaries is for the
jury.

ID. — INSTRUCTIONS — PRESUMPTION. — Where the jury are correctly in-
structed as to the applicability of the evidence before them, it is a pre-
sumption of law that they exercised their jurisdiction soundly.

APPEAL from a judgment of the Superior Court of
Humboldt County, and from an order refusing a new
trial.

The facts are stated in the opinion.

*Horace L. Smith*, and *A. J. Moore*, for Appellant.

*Attorney-General Marshall, G. W. Hunter*, and *J. N.
Gillett*, for Respondent.

FOOTE, C. — The defendant was convicted of the crime
of murder in the first degree; from the judgment therein,
and an order refusing him a new trial, he has appealed.

He contends that the prosecution was allowed, over his
objection, to introduce evidence which tended to show
that prior to the night on which he is alleged to have
murdered Kimball, the deceased, while burglarizing the
latter's house, another burglary had been committed of
a saloon belonging to Knight and Pardee, situated some

twelve miles distant from the place of Kimball's murder, and that from the saloon a pistol, a small nugget of gold, with some other articles, were then and there stolen; that the nugget of gold was found in a box with a piece of cloth around it, other jewelry being also in the box; that the pistol was found in the woods with a sack, which contained articles of food and a cup, and that near the spot where the pistol was found was also discovered a quilt, which the evidence tended to show was the property of the defendant.

That evidence was also allowed to be introduced, notwithstanding his objection, to the effect that the house of J. S. Connick had been burglarized the night previous to the killing of Kimball, and articles of food, a small sack, and shirt taken therefrom, and that the defendant had been seen in that neighborhood about the time of the commission of the burglary.

It appeared in evidence, in addition to the matters just stated, that the box containing the jewelry and nugget of gold was found by the witness, Peterson, near by the spot at which the defendant was arrested, in a certain road; that this box had been on the next morning delivered to one T. M. Brown; that after such delivery he asked the defendant where he got "that jewelry," or "the jewelry that is in the box," to which the defendant answered that he got it from Dan (who Dan was not being shown); that Mr. Knight identified the pistol as being one taken from the burglarized saloon, and Mr. Pardee identified the nugget of gold which was in the box when delivered to Mr. Brown as having been taken at the same time with the pistol.

It was also shown that the person who entered Kimball's dwelling and killed him used, to effect his burglarious entrance, a knife and a chisel, and that said articles, some food, a cup, a shirt, and a sack had been taken from the burglarized house of Connick, and belonged to him; that around the box containing the

jewelry and nugget of gold was a piece of cloth similar in color, texture, and general appearance to the shirt of Connick thus taken.

The evidence also strongly tended to make it apparent that Kimball was killed with a pistol, and that in accomplishing his murder three shots were fired; that the pistol ball taken from the body of the deceased was the same in size as those carried by the pistol produced in evidence, and that such weapon when stolen from the saloon had five chambers thereof loaded, and when found had but two.

It therefore became a most material question in the case whether the defendant ever had that pistol in his possession.

Therefore the existence of that fact became a relevant subject of inquiry, and having become a relevant fact, any evidence which tended to prove it became also relevant. (Reynolds's Stephen on Evidence, art. 9, p. 15.)

It is very clear that it was proper to show that the defendant admitted the possession of a nugget of gold, which had been taken at the same time as the pistol.

The other facts and circumstances claimed as having been improperly admitted in evidence tended necessarily to explain and throw light upon those above stated, and were therefore relevant, whether in favor of or against the defendant.

But it is claimed for him that the admission of such facts and circumstances (if they proved him to have committed the burglaries of the saloon and Connick's house) was erroneous, because it involved substantially a trial of offenses not charged in the information upon which he was then being tried, and would prejudice the jury against him as a hardened criminal.

As a general proposition, the point contended for might be well taken. But it must be borne in mind in this case the evidence objected to tended directly to show that the defendant had committed the crime of which he

stood charged, and must, therefore, have been relevant and competent; and if it also tended to induce the belief that he had been the perpetrator of other crimes, he cannot be heard to complain, since his own acts in multiplying his offenses against the laws of the land ought not to be permitted to diminish the volume of competent evidence. (*State* v. *Adams*, 20 Kan. 319; *People* v. *McGilver*, 67 Cal. 56.)

The jury were well and clearly instructed that the evidence claimed as erroneously admitted could only be considered by them "for the purpose of passing upon the question as to whether the pistol in evidence had been in the possession of the defendant, and used by him to kill said Kimball as charged."

And they were in language full and explicit forbidden to convict the defendant because the evidence showed him to be a man of bad character, as having committed the burglaries of the saloon and Connick's dwelling.

It is a presumption of law that the jury exercised its jurisdiction soundly, after the court had performed its duty as it did, in instructing them correctly as to the applicability of the evidence before them. (*State* v. *Watkins*, 9 Conn. 54.)

The defendant urges, further, that the trial court left the question of the sufficiency of the evidence connecting him with the burglaries of Connick's house, and the saloon, to the jury; that this was a matter of law for the court to determine, and not for the jury.

As it seems to us, the duty of the court in that particular was well and correctly performed. It admitted the evidence as being pertinent and relevant, and left the jury to determine its weight under proper instructions as to the law governing its applicability.

The circumstantial evidence in the case, taken in connection with the testimony of the widow of the deceased, satisfy us that the jury were fully warranted in believ-

ing as they did that the defendant, and no other person, was the murderer of Kimball.

The legal propositions contained in instructions 2, 5, 6, 8, and 11, asked for by the defendant and refused, were all of them plainly and sufficiently enunciated in the charge of the court to the jury, and nothing contradictory to or conflicting therewith was otherwise given.

The judgment and order should be affirmed.

SEARLS, C., and BELCHER, C. C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are affirmed.