## The State *v.* Samuel W. Rome.

Third Judicial District, Bridgeport, April Term, 1894. Andrews, C. J.,
Torrance, Fenn, Baldwin and F. B. Hall, Js.

There is no legal distinction, so far as the weight and effect which should be given it is concerned, between direct and circumstantial evidence. If the evidence in a criminal case, whether direct or circumstantial, satisfies the jury of the guilt of the accused beyond a reasonable doubt, they should convict, otherwise they should acquit. An attempt in a charge to the jury to classify evidence as direct and circumstantial, making different rules applicable to each, would only serve to confuse the minds of the jury and divert their attention from the main issue.

In criminal cases each fact or circumstance essential to the conclusion of guilt must be proved by direct evidence beyond a reasonable doubt; and the inferences drawn from the facts or circumstances so proved should be natural and logical ones, the result of an open, visible connection and relation between the fact or circumstance proved and the inference drawn therefrom.

The trial court charged the jury that in order to convict the accused the
   proof ought to be not only consistent with his guilt, but inconsistent
   with any other rational conclusion. *Held* that the accused had no
   cause of complaint because the court did not go further and charge
   that every single circumstance forming a part of the combination of
   circumstances relied on for conviction must be proved beyond a rea-
   sonable doubt, and that the jury must not only be satisfied from a
   consideration of the circumstances both singly and as a whole that
   defendant's guilt had been proven beyond a reasonable doubt, but that
   from each and all of the circumstances no reasonable hypothesis could
   be adduced consistent with innocence.

A charge to the jury is not argumentative and obnoxious to the spirit of
   § 1630 of the General Statutes merely because the court in its discre-
   tion comments upon the evidence and presents to the jury such perti-
   nent and relevant questions, subordinate to the main question, as
   properly arose from the evidence and such as the jury ought to consider
   and decide, if the court does not direct the jury how to find their ver-
   dict or state its opinion as to what the verdict should be.

The charge of the court in this case reviewed and *held* not to violate the rule
   that instructions should not direct the attention of the jury too prom-
   inently to the testimony of one side, and ignore or pass lightly over the
   testimony of the other side deserving equal attention.

[Argued April 19th—decided May 29th, 1894.]

CRIMINAL PROSECUTION for arson in the Superior Court
in Fairfield County; tried to the jury before *Hamersley, J.,*
The accused was convicted and sentenced, and appealed for
alleged errors of the court in its charge to the jury.   *No error.*

The case is sufficiently stated in the opinion.

*J. C. Chamberlain* and *Nathaniel W. Bishop* for the appel-
lant (the accused).

*Samuel Fessenden,* State's Attorney, for the State.

FENN, J.   The appellant was tried and convicted in the
Superior Court for Fairfield County upon an information
charging him with the crime of arson.

Upon the trial the State offered no direct evidence of the
act of setting fire to the building burned, but relied upon
facts and circumstances claimed to have been proved to es-
tablish the guilt of the accused.   The reasons of appeal,

seven in number, relate solely to alleged errors in the charge of the court to the jury. These reasons present in effect three claims : *First*, to use the language of the appellant's brief, that the court erred in giving to the jury instructions which " amount, substantially, to the following proposition of law : that for the practical purposes of the trial, there is no difference between what is called circumstantial and what is called direct evidence ; that the same weight is to be given to each ; and that the same criterion of sufficiency is applied to both alike." *Second*, that the court gave instructions to the jury which were " argumentative, and well calculated to give to the jury a strong impression that the court was of the opinion that the accused was guilty of the crime charged, and was endeavoring to bring them to his views." *Third*, that the charge as a whole is erroneous, " because it contains only the claims of the State and the facts upon which it relied for conviction, and completely passes over the evidence offered by the defense to disprove these."

These claims we will consider in the order above indicated. The material language of the charge in reference to what is called circumstantial evidence is as follows :—" It is sometimes said that circumstantial evidence is not as satisfactory as direct evidence. As a general proposition, that is not true. Indeed, all evidence is essentially circumstantial evidence ; that is, evidence in every case consists in the proof of certain circumstances from which you are asked, in the exercise of your reason and common sense, to infer the guilt of the accused.

" By direct evidence is usually meant the testimony of a witness who claims to have seen the commission of the act charged as crime. But such testimony is merely one circumstance from which you are asked to infer the guilt of the accused ; and such circumstance, by itself, is rarely sufficient to justify a conviction. To illustrate : a witness testifies that he saw the accused strike a match from which the fire charged as a crime resulted. Such testimony, by itself alone, by no means satisfactorily proves the crime. To constitute the crime the act must be accompanied by a criminal intent ;

and that intent can only be inferred from the circumstances surrounding the act. But the commission of the act cannot safely be inferred from the bare statement of the witness; he says he saw the accused, that is he saw a person so resembling the accused that he believed the accused to be that person. Now whether you can safely infer the fact that the accused is the person, depends upon the circumstances to be proved, such as the condition of the light, the distance, familiarity with the appearance of the accused, and accuracy of sight. And the fact to be inferred from the statement of the witness depends also upon other circumstances, such as the capacity of the witness to remember accurately, his truthfulness, bias or interest in the result, and the like.

"You can readily see that in every case the inference of guilt must be drawn from circumstances, and that all satisfactory proof must depend on circumstantial evidence. And I am sure that your own common sense will lead you to a conclusion that when a satisfactory inference of guilt is based mainly on the one circumstance of the testimony of one eye witness, there is more danger of error—more danger of mistake—than when an equally satisfactory inference of guilt is based upon several important circumstances showing the guilt of the accused, and supported by the concurrent testimony of many witnesses.

"The truth is, gentlemen, that for the practical purposes of the trial there is no difference between what is called circumstantial evidence and what is called direct evidence. Any attempt to so classify evidence serves only to confuse and to divert the minds of the jury from the single legitimate question : ' Does the evidence in this case satisfy you of the guilt of the accused, beyond any reasonable doubt ? '

"It is sometimes said that in cases of circumstantial evidence every reasonable hypothesis consistent with the innocence of the accused must be excluded ; and it is said by the author from whom I am asked to read : ' Where a criminal charge is to be proved by circumstantial evidence, the proof ought to be not only consistent with the person's guilt, but inconsistent with any other rational conclusion.' This

is true, but no more true of so-called circumstantial evidence than of so-called direct evidence. In any case, if the evidence is consistent with a reasonable hypothesis or supposition that the prisoner is innocent, there must be a reasonable doubt of his guilt; and the meaning of this phrase is substantially the same as that of the more usual and safe formula—in order to convict the accused in any case the jury must be satisfied of his guilt, by the evidence, beyond any reasonble doubt."

The claim on the part of the appellant is, that the courts and text writers have recognized a marked distinction between the two classes of evidence, direct and circumstantial, and that while the absolute necessity of convicting on circumstantial evidence is strongly urged for the safety of society, in view of the secrecy of many crimes, yet that juries have been and should be warned that this class of evidence must be weighed with greater caution than direct. The real point of the appellant's contention appears to be this: That it was not enough to tell the jury, as they were most distinctly told by the court, that "the proof ought to be not only consistent with the person's guilt, but inconsistent with any other rational conclusion," an extreme statement, except as limited by the court to be equivalent to proof beyond reasonable doubt, but which it is said applies only to the circumstances taken as a whole, and in aggregation; but that the jury should have been further instructed that "every single circumstance forming a part of the whole combination of circumstances relied on for conviction, must be proved beyond a reasonable doubt;" and that the jury "should not only be satisfied from a consideration of the circumstances, both singly and as a whole, that guilt has been proven beyond a reasonable doubt, but that from each and all of the circumstances no reasonable hypothesis can be adduced consistent with innocence."

This, it seems to us, is requiring the statement to the jury of a rule which would indeed well serve the purpose of a defendant in a criminal case, since it would in all probability be misunderstood, and certainly if understood and followed,

would render conviction, in any case where so-called circumstantial evidence had alone been introduced, impossible.

Conclusions of jurors in all cases result from inferences. The circumstances on which the inferences are based, in all cases must be directly proved, and in criminal cases each fact, the existence of which is necessary to the conclusion of the guilt of the accused, must be so proved beyond a reasonable doubt. Every fact from which an inference necessary to a conviction is drawn, being so proved by direct evidence and beyond a reasonable doubt, the inference based on any fact so proved should be a clear, strong, natural, logical one, the result of an open and visible connection and relation between the fact proved and the matter inferred. Suppose the question is whether A stole a horse, and a witness deposes that A was found in possession of the horse the night after it was missed; the evidence on this point is the direct statement of the witness. If the jury have any reasonable doubt as to the correctness of that statement they ought not to regard it as introducing any fact into the case. If they have none, the fact is introduced, and the inference or presumption resulting from such possession by the accused arises.

In order to render any circumstantial evidence admissible, two elements are essential. It must be a direct statement, and of a relevant fact. The court is the sole judge of the question concerning its admissibility. The evidence being admitted, the jury is the sole judge of its weight. They are not bound to believe any witness, or to be convinced by any given amount of circumstantial evidence. Doubtless such circumstantial evidence varies greatly in its probative force, but there is and can be no rule of law requiring the jury to convict on the stronger evidence or to acquit on the weaker. Stephen's General View, Criminal Law, pp. 249, 251, 273, 274; *State* v. *Watkins*, 9 Conn., 47, 54; *State* v. *Green*, 35 Conn., 203. The whole subject must be left entirely in the hands of the jury. So long as they are informed as to their duty not to draw any inference whatever from any fact not sufficiently proved, the inferences which they

may draw from those which are proved, if such as the evidence tends to prove, must be left to their exclusive and free judgment; with which it is neither the duty nor the privilege of the court to interfere. The conclusion reached by Wharton in his work on Criminal Evidence, 9th ed., § 20, after elaborate discussion, appears to us to be correct. He says:—"There is therefore, no ground for the distinction between circumstantial and direct evidence. All evidence admitted by the court is to be considered by the jury in making up their verdict; and their duty is to acquit, if on such evidence there is reasonable doubt of the defendant's guilt; if otherwise, to convict." The charge of the court below upon the point now under consideration, taken as a whole, seems to us to be clear, substantially correct, and certainly sufficiently favorable to the accused. The conclusion reached, that for the practical purposes of a trial, an attempt in instructions to juries to classify evidence as direct and circumstantial, making different rules as applicable to each, would serve " only to confuse and divert the minds of the jury from the single legitimate question—' does the evidence in this case satisfy you of the guilt of the accused, beyond any reasonable doubt ' "—is sound.

In the next place, it is claimed, as we have seen, that the instructions given were argumentative and calculated to give the jury an impression that the court believed the accused guilty. All the reasons of appeal from the second to the sixth inclusive, relate to this ground. We will quote such language from the charge as is most strongly relied upon. The fire occurred in a building in which the appellant was running a saloon. The property was insured in the appellant's name and for his benefit; but it was claimed by the defendant, that under a certain agreement he could not have received any benefit from such insurance. The court, considering motive, said:—" The practical question, however, is, did Rome, an illiterate man, believe, and act on his belief, that the burning of this property would prove of advantage to him ? Does the evidence leave in your minds any reasonable doubt that Rome actually believed that in case of

the destruction of the property by fire, the money received
on the insurance policy taken out by himself, in his own
name, would come to him, and prove of pecuniary benefit to
himself?" Again, referring to a claim made by the State and
denied by the defendant, that there had been preparation for
a fire in the saloon in a space back of the ice box, the defend-
ant claiming the articles found there were merely rubbish
accumulated in the ordinary care of the saloon, the court
said:—" This fact is of great importance in the case of the
State. You have heard the testimony and saw the articles
taken from the place, and you will say whether you have
any reasonable doubt that the articles were specially arranged
and freshly saturated with oil, on the evening of the fire, as
described by the officers." Other language used by the
court, complained of by the appellant, is as follows:—" In
view of all the evidence, in view of the facts actually proved,
can you reasonably suppose these preparations could have
been made without the co-operation of the accused? The
conduct of the accused, after the fire, may have a bearing
on this question. He arrives in time to see his property
saved from destruction. Does he show any signs of rejoic-
ing? When the officer points to the alleged preparations
in the cellar, and says, ' this looks bad for you,' does he show
any indignation at the unjust charge? Is his silence the
stupidity of intoxication, or is it the silence of conscious
guilt? Of course, it is possible that some person other than
Rome, and without his knowledge, set fire to the building.
There is a possibility of innocence in the case of every per-
son convicted of crime. That is not the question. The
real question is, is the possibility such as to justify a reason-
able doubt? Is the claim suggested a reasonable one, or is
it a mere fanciful doubt, only within the range of remote
possibilities?"

General Statutes, § 1630, provides that:—" The court
shall state its opinion to the jury upon all questions of law
arising in the trial of a criminal cause, and shall submit to
their consideration both the law and the facts, without any
direction how to find their verdict." It is said that this

charge is not in accordance with that express statutory provision. It is not claimed that there was a direct violation of its letter, but it is asserted that its spirit was plainly disregarded. Is this so? The court neither directed the jury how to find their verdict, nor stated its opinion concerning what that verdict should be. Had such expressions of opinion been given, it would be as consistent to say that they would not constitute a direction, as to say that the statement of the opinion which the statute requires, as to the law, is not such direction. But the court did not do this. The most that can be correctly asserted is that it presented to the jury such pertinent and relevant questions, subordinate to the main question, as properly arose from the evidence; and which the jury ought to consider and decide, in a way somewhat suggestive of the manner in which the court itself would be likely to consider and decide them; which is precisely like in kind, though falling far short in degree, to that which courts constantly do while passing upon the relevancy of offered evidence, as tending to prove by inference a further fact, which the jury is nevertheless, in the last analysis, to be left entirely free and unbiased to say it does or does not tend to prove. To say that a court must in no case present evidence to a jury in such a way as by any possibility to indicate its own impression as to its significance, as tending to establish any point in the case, is to lay down a seemingly impossible rule for judicial conduct. A rule which, if possible to observe, could have no other reason for existence than such a distrust of the intelligence and independence of juries as is inconsistent with any respect for such a form of trial; which leaves a judge, useful perhaps as a presiding officer, but powerless as a minister of justice—shorn of his attributes, without function, colorless, useless.

If it be true, and we hold it is, as stated by this court in *State* v. *Watkins*, 9 Conn., 54, that "confidence must be put in the jury," and "that they exercised their jurisdiction soundly is a presumption of law," then there can be no sense in preventing a court from rendering assistance to them, on the ground stated in the brief in behalf of the appellant, in

which it is said that such expressions as those used by the
trial court affect the verdict, because "the average juror"
is "ever too eager to throw the burden of responsibility of
convicting the accused upon the court, and ever too alert to
catch any indication of opinion in regard to these facts on
the part of the trial judge, that will enable him to bring his
verdict in conformity therewith."

Doubtless the law, as quoted by the appellant from Thomp-
son on Trials, is correct: "The jurors are the sole judges of
the credibility of the witnesses, the weight of evidence,
and the facts that it establishes; and any form of charge,
the effect whereof is to take these from them, or to obstruct
the free exercise of their judgment in passing upon these, is
erroneous." The trial court, however, took nothing from
the jury, but instead, by its charge presented to them the
true questions for their consideration, thus assisting but not
obstructing them in the free exercise of their judgment.

That the conduct of the trial court in this respect was en-
tirely proper, is abundantly shown by previous decisions of
this court. In *State* v. *Duffy*, 57 Conn., 529, it was said:
"The defendant further complains of the charge of the court,
but a careful examination of it shows clearly that no just
exception can be taken to it. Comments of the court in its
charge upon the evidence in the case are within the proper
province of the court, so long as they do not amount to a
direction or advice as to how the jury shall decide the mat-
ter to which the evidence relates." In *Setchel* v. *Keigwin*,
57 Conn., 478, the language of STORRS, J., in *First Baptist
Church* v. *Rouse*, 21 Conn., 167, is repeated and approved:
"It is competent in all cases, and in some highly expedient,
for the court not only to discuss but to express its opinion
upon the weight of the evidence, without however directing
the jury how to find the facts; and this is a right necessarily
limited only by its own discretion." This last was a civil
case, but the statute, General Statutes, § 1101, applicable to
such cases, is identical with General Statutes, § 1630, in its
language prohibiting the court from instructing the jury how
to find upon questions of fact. See also, *Morehouse* v. *Rem-*

State v. Rome.

*son*, 59 Conn., 392. If a court had no such power as is above indicated, it would be absurd and a contradiction to say that it was the duty of a court to do things which involve its exercise; as in *State* v. *Williamson*, 42 Conn., 261, to caution the jury as to the weight to be given to the evidence of an accomplice, and advise them, as a general rule, that it is safer to acquit where there is no corroboration of such evidence. It may be said that this is in favor of the accused. But the statutory prohibition would be violated by a court that should direct a jury to return a verdict of not guilty, as truly as by one that directed a verdict of guilty. This, too, must be held to be the intent of the statute as long as it is considered that the public have rights, as well as those accused of violation of the laws enacted for its protection and welfare. We need only add generally, for examples are infinite, that in every instance in which a court states to a jury a so-called presumption, whether it be styled one of fact, or one of law; whether it be of "aquatic habits in an animal found with webbed feet," or "of a malicious intent to kill, from the deliberate use of a deadly weapon," though doing what a consensus of judicial opinion everywhere holds to be a duty, it is also doing that which is contrary to our statute, if it is capable of the construction for which the appellant contends.

Concerning the remaining ground of alleged error, which relates to the charge as a whole, it is impossible, without reciting substantially the entire charge, to say more (nor is it necessary), than that we fully agree with the appellant in the rule which he states, quoting from Thompson on Trials, § 2330, that:—" Instructions should not be so drawn as to direct the attention of the jury too prominently to the facts in the testimony on one side of the case, while sinking out of view, or passing lightly over portions of the testimony on the other side which deserve equal attention. If the jury are misled thereby, judgment will be reversed." But we are unable, from a careful examination of the record, to see that the court below violated such rule.

There is no error.

In this opinion the other judges concurred.