**Certiorari Denied, February 24, 2017, No. S-1-SC-36280**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2017-NMCA-033**

**Filing Date: December 29, 2016**

**Docket No. 35,006**

**STATE OF NEW MEXICO,**

      **Plaintiff-Appellee,**

**v.**

**JOSEPH MONTOYA, aka JOSEPH E.
MONTOYA, aka JOSEPH EMETERIO
MONTOYA, aka JOSE MONTOYA,**

      **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF SAN MIGUEL COUNTY
Gerald E. Baca, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Elizabeth Ashton, Assistant Attorney General
Albuquerque, NM

for Appellee

L. Helen Bennett
Albuquerque, NM

for Appellant

## OPINION

**SUTIN, Judge.**

**{1}** This case turns on whether Defendant's conviction for his robbery of the victim he earlier robbed and killed can stand given that the victim was already dead at the time of the second robbery. The question presented to us is one of "personhood," Defendant contends.

1

He asserts that just as one cannot kill a person already dead, one cannot rob a person already dead. We hold that under the facts of this case, the robbery statute was properly applied, and Defendant was properly convicted of robbery despite the posthumous—by several hours—nature of the second robbery.

## BACKGROUND

**{2}**    Defendant Joseph Montoya, with the assistance of others, robbed and then killed Angel Arroyo. Defendant then left the scene of these crimes. Returning a few hours later, Defendant, again with the aid of others, emptied Arroyo's pocket of any remaining cash, poured gasoline throughout the residence and on Arroyo's body, then set the residence on fire. Convicted of multiple crimes and sentenced to 104.5 years of incarceration, Defendant challenges the application of the robbery statute when the robbery commenced and concluded on a person dead for several hours. He also raises ineffective assistance of counsel because his attorney did not request an instruction on theft as a lesser included offense of robbery.

## DISCUSSION

### Personhood

**{3}**    We start with whether Defendant's conviction for the second robbery was lawful. We review this issue de novo, since it involves statutory interpretation. *State v. Duhon*, 2005-NMCA-120, ¶ 10, 138 N.M. 466, 122 P.3d 50; *see State v. Almanzar*, 2014-NMSC-001, ¶ 9, 316 P.3d 183.

**{4}**    NMSA 1978, Section 30-16-2 (1973), reads: "Robbery consists of the theft of anything of value from the person of another or from the immediate control of another, by use or threatened use of force or violence." The jury was instructed that in order to find Defendant guilty of robbery, the State was required to prove Defendant took cash from Arroyo's pocket by force or violence, intending to deprive Arroyo of the cash. *See* UJI 14-1620 NMRA. "[R]obbery is distinct from larceny because it requires, and is designed to punish, the element of force." *State v. Bernal*, 2006-NMSC-050, ¶ 28, 140 N.M. 644, 146 P.3d 289.

**{5}**    Defendant contends that there was insufficient evidence to convict him of robbery after he returned to the scene of the killing because "a robbery conviction is improper when the robbery both commences and concludes on a dead person." He relies on language in *Stephenson v. State*, 29 N.E.3d 111, 116 (Ind. 2015), that states, "[w]hile a robbery conviction may not be proper when a robbery both commences and concludes on a dead person, the crime is committed when part of the robbery occurs before the victim's death and the other part occurs after the death." Defendant argues that just as attempting to kill someone who is already dead is a legal impossibility, "one cannot rob a corpse." He further argues that Arroyo did not have immediate control over the cash in his pocket when Arroyo

2

was already dead, as required under Section 30-16-2. And he argues that the Legislature did not intend the robbery statute to apply to circumstances, such as those here, in which the victim was no longer a "person." Defendant asserts that "[t]he temporal and relational gap between the first robbery and shooting and killing of Arroyo, and the subsequent, second theft of money from Arroyo's body before the arson is simply too large, and was broken by [Defendant's] flight from the scene intending to go elsewhere." The bottom line, according to Defendant, "[p]ersonhood ceases upon the death of the individual." He cites articles that medically and philosophically wax on life as fundamental to the term "person," as a term that ceases to apply upon death. *See, e.g.*, John D. Arras, *The Severely Demented, Minimally Functional Patient: An Ethical Analysis*, 36 JAGS 938, 940 (1988) (arguing that patients who lack all fundamental human capacities have ceased to be persons in any meaningful sense); Amir Halevy & Baruch Brody, *Brain Death: Reconciling Definitions, Criteria, and Tests*, 119 Annals of Internal Med. 519, 523 (1993) (noting that while there are many different views of personhood, all, except those that identify personhood with simple biologic functioning, require cortical activity).

**{6}**     The application of a robbery statute to theft from a dead person has been addressed in several cases. Our Supreme Court in *State v. Barela*, No. 32,506, 2013 WL 1279111, at *19-20, dec. (N.M. Sup. Ct. Mar. 28, 2013) (non-precedential), upheld a robbery conviction "where the killing and the taking of the property are part of the same transaction of events[]" and adopted the following view, quoted from *James v. State*, 618 S.E.2d 133, 138 (Ga. Ct. App. 2005).

> Although, as an abstract principle of law, one ordinarily cannot be guilty of robbery if the victim is a deceased person, this principle does not apply where a robbery and homicide are a part of the same transaction and are so interwoven with each other as to be inseparable. If the taking was made possible by an antecedent assault, the offense is robbery regardless of whether the victim died before or after the taking of the property.

*Barela*, 2013 WL 1279111, at *20 (alteration, internal quotation marks, and citation omitted). *Barela* also relied on *People v. Navarette*, 66 P.3d 1182, 1207 (Cal. 2003), for the similarly stated view that "while it may be true that one cannot rob a person who is already dead when one first arrives on the scene, one can certainly rob a living person by killing that person and then taking his or her property[.]" *Barela*, 2013 WL 1279111, at *20 (alteration, internal quotation marks, and citation omitted).

**{7}**     At least two less-recent cases came to the same or similar conclusion. *See*, *e.g*., *Smothers v. United States*, 403 A.2d 306, 313 n.6 (D.C. 1979) ("It is settled law in this jurisdiction that a dead person can be a robbery victim, at least where the taking and the death occur in close proximity."); *State v. Coe*, 208 P.2d 863, 866 (Wash. 1949) (holding that a robbery conviction was appropriate when the defendant killed the victim in a vehicle, then took the body from the vehicle, and "conveyed it a distance from the road and took the property from the clothing" of the victim, and stating that it was "not a case where the only

3

act was the taking of property from the person of one deceased" but rather "[t]he robbery commenced with the first overt act on the part of [the co-defendant]").

**{8}** We interpret Section 30-16-2 to apply to the circumstances here and hold that Defendant was properly convicted under Section 30-16-2 for the second robbery that occurred after the killing. It is reasonable to conclude that the second robbery and the subsequent arson were "clean-up" activities directly connected with the original robbery and killing, and therefore the second robbery can rationally be linked to the murder that enabled the robbery.

**Ineffective Assistance**

**{9}** "Normally, a claim of ineffective assistance of counsel is established by a showing of error by counsel and prejudice resulting from the error." *State v. Grogan*, 2007-NMSC-039, ¶ 11, 142 N.M. 107, 163 P.3d 494. An error is found if the "attorney's conduct fell below that of a reasonably competent attorney." *State v. Baca*, 1997-NMSC-059, ¶ 24, 124 N.M. 333, 950 P.2d 776. The defendant has the burden to show both incompetence and prejudice. *See id.*

**{10}** Defendant contends that his counsel was ineffective for failing to request the district court to give a lesser included offense instruction on "theft." Defendant does not refer to the particular statute, but presumably intends application of NMSA 1978, Section 30-16-1 (2006) (defining "larceny"). We cannot agree. Counsel may have consciously determined that the better strategy was to defeat the second robbery conviction leaving no step-down charge. *See Bernal*, 2006-NMSC-050, ¶ 35 (stating that the defendant's claimed errors "may implicate tactical decisions made by counsel . . . and are best evaluated during habeas corpus"). Further, Defendant has not shown prejudice. *See Grogan*, 2007-NMSC-039, ¶ 11; *State v. Herrera*, 2001-NMCA-073, ¶ 36, 131 N.M. 22, 33 P.3d 22 (requiring, for a prima facie case, proof of both lack of reasonable competence and prejudice).

**{11}** Even assuming that the lesser included offense had been requested, we do not hold that there existed a reasonable probability that, but for counsel's error, the result would have been different. *See Bernal*, 2006-NMSC-050, ¶ 32 ("With regard to the prejudice prong, generalized prejudice is insufficient. Instead, a defendant must demonstrate that counsel's errors were so serious, such a failure of the adversarial process, that such errors undermine judicial confidence in the accuracy and reliability of the outcome." (alteration, internal quotation marks, and citations omitted)). "A defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (internal quotation marks and citation omitted).

**{12}** Defendant is free to pursue his ineffective assistance claim in a habeas corpus proceeding. *See Grogan*, 2007-NMSC-039, ¶ 9; *Herrera*, 2001-NMCA-073, ¶ 37.

**CONCLUSION**

**{13}**    We affirm Defendant's second robbery conviction.

**{14}    IT IS SO ORDERED.**

 

_____

**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____

**M. MONICA ZAMORA, Judge**

_____

**J. MILES HANISEE, Judge**